[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**Slip Opinion No. 2022-Ohio-4298**

THE STATE OF OHIO, APPELLANT, *v.* YERKEY, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298.]**

*Marsy's Law, Article I, Section 10a of the Ohio Constitution—Restitution—R.C. 2929.18(A)(1)—Statutory meaning of restitution was not altered or expanded by Marsy's Law—Wages lost by crime victim as a result of victim's voluntarily attending criminal-court proceedings do not qualify for restitution from offender, because such losses are not a direct and proximate result of the commission of the offense.*

(No. 2020-1392—Submitted September 22, 2021—Decided December 5, 2022.)

APPEAL from the Court of Appeals for Columbiana County,

No. 19 CO 0044, 2020-Ohio-4822.

_____

**BRUNNER, J.**

## I. INTRODUCTION

{¶ 1} This matter calls for us to decide whether a crime victim is entitled to receive restitution from an offender for wages lost as a result of the victim's choice to exercise her right to attend court hearings. Applying both the Ohio Constitution's victims' rights amendment, Article I, Section 10a (known as "Marsy's Law"), and the relevant statutes, we conclude that Marsy's Law provides a right to "full and timely restitution" but did not alter the meaning of "restitution" in Ohio law. Restitution in Ohio is limited to economic losses suffered by the victim as a direct and proximate result of the commission of the offense. Therefore, unless the loss of wages is directly and proximately caused by the offense (as, for example, when a victim misses time at work because of an injury to the victim caused by the offense), lost wages are not compensable as restitution. Accordingly, we affirm the judgment of the Seventh District Court of Appeals.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 3, 2018, an officer filed a complaint in the Columbiana County Municipal Court alleging that appellee, John Yerkey, had violated a protection order when he went to the home of his ex-wife and refused to leave. In addition, Yerkey had apparently sent her email messages and items through the mail. A short time later, on August 1, 2018, a second complaint was filed alleging that Yerkey had once again violated the order, by driving by his ex-wife's home. On August 8, 2018, a third complaint was filed based on Yerkey's attempt to connect with his ex-wife via social media and to share his location with her.

{¶ 3} Because Yerkey had previously been convicted of violating a protection order, the municipal-court cases were soon indicted as two cases in the Columbiana County Court of Common Pleas: case Nos. 2018 CR 263 and 2018 CR 307. The indictment in case No. 2018 CR 263 was filed on August 16, 2018, and involved a single fifth-degree felony count of violating a protection order. The

indictment in case No. 2018 CR 307 was filed on September 14, 2018, and consisted of two fifth-degree felony counts of violating a protection order. Yerkey initially pled "not guilty" to all charges on September 27, 2018.

{¶ 4} However, on March 1, 2019, Yerkey entered into a plea agreement with appellant, the state of Ohio, whereby he would plead guilty to two of the three fifth-degree felony charges and the state would recommend community-control sanctions. On March 26, 2019, the trial court accepted Yerkey's guilty pleas. It appears to be undisputed that the factual bases for the charges to which Yerkey pled guilty were his driving by the victim's house on July 31, 2018, and sharing his location with her on social media via a "find friends request" on August 7, 2018. Two months after Yerkey's pleas were accepted, the trial court sentenced him to a term of four years of community control with intensive supervision for each count, with the terms to run concurrently, and noted that it would later address the issue of restitution, giving the victim 30 days to provide documentation to the prosecutor.

{¶ 5} On September 27, 2019, the trial court held a restitution hearing. The victim testified that she was seeking restitution for lost wages relating to seven full days' worth of work that she missed in connection with attending hearings for the criminal cases. She testified that she worked for Big Lots, earning $29.14 an hour, and that the total of her lost wages amounted to $1,615. She submitted a handwritten calculation showing how she had reached that total.[1] In addition to the lost wages, the victim also requested nearly $20,000 in attorney fees, medical bills,

---

1. The document is vague regarding the hours of work the victim missed and is inconsistent with her testimony regarding her hourly wage. The victim testified that she worked for Big Lots, earning $29.14 an hour, and that the total amount of her lost wages was $1,615. The formula used in the document, however, without explanation for the difference, calculates the lost wages by using a daily rate of $230.76 (rather than $233.12, which would be her daily rate if she were earning $29.14 an hour, assuming an eight-hour workday). Her written calculation also lists 11 specific dates; though it might be 12, depending on whether the notation "Aug/Sept 16" constitutes two dates or whether it is meant to convey uncertainty about whether the missed date was August 16 or September 16. No clarification of the hours of work missed or explanation for the inconsistency in her hourly wage was offered.

and counseling bills, related to treatment and professional services sought in connection with the divorce and disintegration of her relationship with Yerkey. The trial court orally indicated that expenses or costs incurred prior to the criminal conduct at issue in the cases or not proximately caused by the criminal cases, could not be awarded as restitution. But it expressed the belief that lost wages could be "arguably directly and proximately related to the cases." It took the matter under advisement and ultimately issued a written entry ordering $1,615 in restitution for the lost wages of the victim.

{¶ 6} The Seventh District reversed the restitution order. It concluded that Marsy's Law reaffirmed the victim's right to be present at all public proceedings and to receive full and timely restitution. 2020-Ohio-4822, 159 N.E.3d 1232, ¶ 24-26. However, it reasoned that such rights do not exist in a vacuum and still need to be construed within the valid and unchanged statutory framework governing restitution in Ohio. *Id.* at ¶ 26. It explained that losing wages while voluntarily attending court hearings is not a direct and proximate result of the commission of the offense. *Id.* It then concluded that since the amount of restitution cannot exceed the actual economic loss suffered by the victim " 'as a direct and proximate result of the commission of an offense,' " the lost wages could not qualify for restitution. *Id.*, quoting R.C. 2929.01(L).

{¶ 7} The state appealed, asserting that because crime victims have a constitutional right to full and timely restitution and to be present at court proceedings, they are entitled to restitution for losses (including lost wages) incurred during the prosecution of offenses. We accepted jurisdiction, 161 Ohio St.3d 1420, 2021-Ohio-254, 161 N.E.3d 713, and now affirm the Seventh District.

4

## III. DISCUSSION

### A. Marsy's Law

**{¶ 8}** In November 2017, the voters of this state passed an amendment to the victim's rights provision of the Ohio Constitution.  That amendment, effective February 5, 2018, provides:

> (A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:
>
> * * *
>
> (2) upon request, to reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings;
>
> (3) to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated;
>
> * * *
>
> (7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim;
>
> * * *
>
> (E) All provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws.

Article I, Section 10a, Ohio Constitution.  This amendment is known as Marsy's Law.

### B. Method of Construing Voter-Approved Constitutional Provisions

{¶ 9} Marsy's Law was approved by direct vote of Ohio's electors, and it is well established how we construe such provisions:

> In construing constitutional text that was ratified by direct vote, we consider how the language would have been understood by the voters who adopted the amendment. *Castleberry v. Evatt*, 147 Ohio St. 30, 33, 67 N.E.2d 861 (1946); *see also State ex rel. Sylvania Home Tel. Co. v. Richards*, 94 Ohio St. 287, 294, 114 N.E. 263 (1916) (when interpreting the Ohio Constitution, "[i]t is the duty of the court to ascertain and give effect to the intent of the people"). The court generally applies the same rules when construing the Constitution as it does when it construes a statutory provision, beginning with the plain language of the text, *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14, and considering how the words and phrases would be understood by the voters in their normal and ordinary usage, *District of Columbia v. Heller*, 554 U.S. 570, 576-577, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

*Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 22. In cases in which the language of the provision is unclear or ambiguous, our analysis may also include a review of the "history of the amendment and the circumstances surrounding its adoption, the reason and necessity of the amendment, the goal the amendment seeks to achieve, and the remedy it seeks to provide." *Id.* Also, we presume that the voters were aware of the laws in existence at the time they voted to adopt the constitutional amendment. *See id.* at ¶ 28; *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547,

¶ 6. It is also axiomatic that the words of the provision passed, except when otherwise indicated, are to be given their ordinary meaning. *Knab* at ¶ 22. So the question is, what would a voter who knew the then-existing law have understood the Marsy's Law provision to mean?

### C. Ohio Statutes and Constitution Prior to Marsy's Law

{¶ 10} Before the enactment of Marsy's Law, there was a more compact constitutional provision regarding the rights of victims of crimes that stated:

> Victims of criminal offenses shall be accorded fairness, dignity, and respect in the criminal justice process, and, as the general assembly shall define and provide by law, shall be accorded rights to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process. This section does not confer upon any person a right to appeal or modify any decision in a criminal proceeding, does not abridge any other right guaranteed by the Constitution of the United States or this constitution, and does not create any cause of action for compensation or damages against the state, any political subdivision of the state, any officer, employee, or agent of the state or of any political subdivision, or any officer of the court.

Former Article I, Section 10a, Ohio Constitution (effective Nov. 8, 1994, to Feb. 4, 2018).

{¶ 11} Among the rights that the General Assembly had "define[d] and provide[d] by law," were statutes governing restitution. *See* R.C. 2929.18(A)(1); R.C. 2929.28(A)(1). In each of those provisions, the amount of restitution is determined "based on the victim's economic loss" and "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the

commission of the offense." R.C. 2929.18(A)(1); R.C. 2929.28(A)(1). "Economic loss" is defined in R.C. 2929.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense," specifically including "any loss of income due to lost time at work because of any injury caused to the victim * * * as a result of the commission of the offense."

### D. Marsy's Law Is Not in Conflict with Ohio Statutes on Restitution

{¶ 12} Marsy's Law provides victims with the right "to *full and timely* restitution from the person who committed the criminal offense or delinquent act against the victim." (Emphasis added.) Article I, Section 10a(A)(7), Ohio Constitution. Marsy's Law also states that its provisions are "self-executing and severable, and shall supersede all *conflicting* state laws." (Emphasis added.) Article I, Section 10a(E). However, Marsy's Law does not specify, explicitly or even by implication, for which losses victims are entitled to receive "restitution." Thus, no portion of Marsy's Law "conflicts" with the restitution statutes such that they are "supersede[d],"[2] Article I, Section 10a(E). Consequently, the statutes governing "restitution" are still used to determine which losses qualify for restitution.

{¶ 13} And since the adoption of Marsy's Law, both this court and other courts in Ohio have continued to determine the amount of restitution based on the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. *See, e.g.*, *Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, at ¶ 19; *Cleveland v. Rudolph*, 8th Dist. Cuyahoga No. 111128, 2022-Ohio-2363, ¶ 16-17; *State v. Dent*, 11th Dist. Lake No. 2020-L-110, 2021-

---

2. Reading Marsy's Law as not conflicting with the restitution statutes is supported by the fact that the initiative petition for the Marsy's Law amendment specifically stated that "the amendment would not prohibit the General Assembly from enacting laws that are consistent with the amendment, nor would it negate existing laws unless they conflict with the amendment." Available at https://www.ohioattorneygeneral.gov/getattachment/ad275a4b-7eb7-4a63-b04e-a75b43a42b97/Ohio-Crime-Victims-Bill-of-Rights.aspx (accessed Dec. 7, 2021) [https://perma.cc/VN4Z-V5UH].

Ohio-2551, ¶ 29-30; *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 23; *State v. Young*, 6th Dist. Lucas No. L-19-1189, 2020-Ohio-4943, ¶ 12-13; *Yerkey*, 2020-Ohio-4822, 159 N.E.3d 1232, ¶ 26 (7th Dist.); *State v. Goff*, 2020-Ohio-1474, 153 N.E.3d 899, ¶ 3 (1st Dist.). Even in *State v. Oliver*, 2021-Ohio-2543, 176 N.E.3d 1054 (12th Dist.), in which the Twelfth District Court of Appeals held that Marsy's Law superseded statutory provisions that limit restitution based on consideration of the defendant's pecuniary circumstances, the court explicitly recognized that the amount of restitution continued to be limited to the economic loss that had been directly and proximately caused by the commission of the offense. *Id.* at ¶ 7-8, 67-69.

{¶ 14} The state makes much of the phrase "full and timely restitution," apparently believing that the adjectives "full" and "timely" vastly expand what losses qualify for "restitution." However, the meanings of the terms "full" and "timely" do not justify such an inference. "Full" is defined as "[c]omplete, perfect; entire, whole; thoroughgoing." *Oxford English Dictionary*, https://www.oed.com/view/Entry/75327 (accessed Nov. 20, 2022). But "full" does not change the nature of the thing being described, unless the thing is described in the first instance as partial, and here, it is not. "Timely" means, "[o]f an action or circumstance: done or occurring sufficiently early or in good time; prompt." *Id.*, https://www.oed.com/view/Entry/202120 (accessed Nov. 20, 2022). "Timely" also does not redefine the nature of the noun it modifies—a timely payment is still a payment. Hence, "full and timely restitution" is still "restitution"; it is simply restitution that is completely accomplished in a prompt manner.

{¶ 15} Nothing in Marsy's Law explicitly or implicitly changes what losses qualify for restitution in Ohio. Consequently, "restitution" continues to mean compensation for economic losses or economic detriment suffered by the victim "as a direct and proximate result of the commission of the offense," *see* R.C. 2929.18(A)(1); R.C. 2929.28(A)(1); R.C. 2929.01(L). In relation to this particular

case, it bears noting that the statutory definition for "economic loss" explicitly includes "any loss of income due to lost time at work because of any injury caused to the victim" but not income lost for reasons other than injury. R.C. 2929.01(L).

### E. Causation in this Case

{¶ 16} Generally speaking, a consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act. *See, e.g.*, *Strother v. Hutchinson*, 67 Ohio St.2d 282, 286-287, 423 N.E.2d 467 (1981). In the context of restitution, we have previously held that wages paid by a company to its employees to investigate a theft from the company and thereby assist in the prosecution of the perpetrator were not compensable as restitution, because the payment of wages was not a direct and proximate result of the commission of the offense. *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423. Specifically, in *Lalain*, a former employee of a company was prosecuted for retaining items of physical and intellectual property after resigning from the company. *Id.* at ¶ 6-10. Although all the property was eventually returned, the company "sought restitution of $55,456 'for the time spent by its employees in support of [the state's] case' and an additional $7,665 for the report 'to provide the County Prosecutor's Office with an accurate valuation of the property that was recovered.' " *Id.* at ¶ 25. We reasoned, "[T]hese expenditures are not the direct and proximate result of the commission of the theft offense; rather, they are consequential costs incurred subsequent to the theft to value the property that had been taken from and later returned to [the company]." *Id.*

{¶ 17} As was true in *Lalain*, losses of the sort claimed by the victim in this case do not flow as a natural and continuous consequence from the *commission* of the offense such that they may be considered "economic loss[es] suffered by the victim as a direct and proximate result of the commission of the offense," R.C. 2929.18(A)(1); R.C. 2929.28(A)(1). The victim has demonstrated no economic

loss from Yerkey's driving by her house or his sharing his location with her through social media. Nor has she alleged that she suffered any injury such that she could claim "loss of income due to lost time at work because of any injury." R.C. 2929.01(L).

{¶ 18} Against this backdrop, several amici argue that failing to use restitution sanctions to cover all a victim's costs runs counter to public policy. No one on this court thinks that victims should not be made whole. But to what extent court-ordered restitution as part of a criminal case may be used to make a victim whole is a matter determined by statute and the Constitution, as explained above. Moreover, it is important to recall that restitution through the criminal justice system is not the only recourse for crime victims. A crime victim has the same access to the civil justice system as anyone who has been the victim of a tort and, moreover, may seek recovery for his or her losses from the crime-victims' compensation funds administered by the Ohio Attorney General and the Court of Claims,[3] which is helpful in cases in which the perpetrator is judgment proof. There is also a countervailing policy consideration—if restitution were to be expanded to include economic detriments that were not "direct and proximate result[s] of the commission of the offense," R.C. 2929.28(A)(1); R.C. 2929.18(A)(1), we would risk mutating sentencing hearings throughout the state into civil trials of all grievances the victim may have against the offender, regardless of their relation to the crimes at issue.[4] For the sake of prompt criminal-justice proceedings across the state, that is a pitfall to avoid.

---

3. See https://ohiocourtofclaims.gov/crime-victims-compensation/ (accessed June 22, 2022) [https://perma.cc/2M7N-KFKK]; R.C. 2929.32; https://www.ohioattorneygeneral.gov/Individuals-and-Families/Victims/Apply-for-Victims-Compensation (accessed June 22, 2022) [https://perma.cc/X82B-9EGD].

4. In fact, this is exactly what could have occurred in this case because, in addition to the lost wages, the victim sought (but was not awarded) nearly $20,000 in attorney fees, medical bills, and counseling bills, related to treatment and professional services sought in connection with the divorce from and disintegration of her relationship with Yerkey before the criminal acts in question even occurred.

## IV. CONCLUSION

{¶ 19} The statutory meaning of restitution was not altered or expanded by Marsy's Law. Crime victims should receive restitution from those whose crimes have directly and proximately caused them to suffer economic loss or detriment. This court's holding in *Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, and the basic concept of direct and proximate causation prevent the lost wages sought by the victim in this case from being assessed against Yerkey as restitution. Although we acknowledge the need for victims to be made whole, victims have other avenues for recovery beyond restitution. Holding otherwise and expanding restitution would be contrary to precedent and statutory law and would risk turning sentencing hearings into civil trials. For these reasons, we affirm the judgment of the Seventh District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY and FISCHER, JJ.

_____

**DEWINE, J., dissenting.**

{¶ 20} In 2017, Ohio voters overwhelmingly approved changes to the Ohio Constitution designed to significantly expand the rights of crime victims. Among the new constitutional rights granted to victims is the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim." Ohio Constitution, Article I, Section 10a(A)(7).

{¶ 21} The majority pays lip service to the voter initiative, but in the end, it holds that a pre-amendment Ohio sentencing statute trumps the constitutional change enacted by the voters. In doing so, a majority of this court once again brushes aside the expressed will of the voters and improperly constricts the rights of victims.

{¶ 22} I would take the opposite approach and apply the statute in a manner that is consistent with the Constitution—not the other way around. I therefore dissent.

## I. The restitution statute and the constitutional provision

{¶ 23} Ohio voters approved changes to Article I, Section 10a of the Ohio Constitution as part of a ballot initiative known as Marsy's Law. The Marsy's Law amendment sought to expand the rights of crime victims and to make those rights enforceable. *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 13-15.

{¶ 24} Marsy's Law contains a number of explicit guarantees designed to strengthen the rights of crime victims. This case deals with the right to "full and timely restitution," Article I, Section 10a(A)(7), as well as a victim's right "to be present" at all proceedings in the criminal case, Article I, Section 10a(A)(2). The question is whether a victim's right to full and timely restitution includes the right to be compensated for time off from work to attend court hearings.

{¶ 25} "Victim" is defined in Marsy's Law as "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Article I, Section 10a(D). By its terms, the amendment is "self-executing" and "shall supersede all conflicting state laws." Article I, Section 10a(E).

{¶ 26} Before the adoption of the Marsy's Law amendment, restitution awards in criminal cases were governed entirely by sentencing statutes. Relevant here, R.C. 2929.18(A)(1) gives the trial court discretion to impose a financial sanction in the form of "[r]estitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss." That statute further provides that "the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct

and proximate result of the commission of the offense." *Id.* The term "economic loss" is defined by statute:

> "Economic loss" means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense, and the cost of any accounting or auditing done to determine the extent of loss if the cost is incurred and payable by the victim. "Economic loss" does not include non-economic loss or any punitive or exemplary damages.

R.C. 2929.01(L).

{¶ 27} In answering the question presented in this appeal, we must consider the interplay between the new constitutional provision and the pre-amendment sentencing statute. In doing so, we must avoid assigning to the statutory provision a reading that raises a constitutional question "if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); *see also State v. Tanner*, 15 Ohio St.3d 1, 2, 472 N.E.2d 689 (1984); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 247-251 (2012).

## II. The majority's flawed premises

{¶ 28} It is axiomatic that "[t]he Constitution is the superior law." *State ex rel. Campbell v. Cincinnati St. Ry. Co.*, 97 Ohio St. 283, 309, 119 N.E. 735 (1918). So anyone with a passing familiarity with our legal system should understand that a constitutional provision trumps a legislative enactment, *see Marbury v. Madison*, 5 U.S. 137, 138, 2 L.Ed. 60 (1803). Yet the majority somehow decides that it is the

pre-amendment statute, not the constitutional provision, that controls. To get there, it employs some fancy footwork.

{¶ 29} Under our established mode of analysis, the majority would start with the language of the Constitution and determine the meaning of "full and timely restitution" in the constitutional provision. Next, it would look at the language of the statute and determine whether there was a reasonable reading of the statute that was consistent with the Constitution or whether there was an irreconcilable conflict. If there was a reasonable reading that was consistent with the Constitution, then it would adopt that meaning. If not, then the Constitution would prevail over the statute. That's pretty much Constitutional Analysis 101. But that is not what the majority does.

{¶ 30} Instead, it points out that before Marsy's Law, there was an Ohio sentencing statute that allowed crime victims to receive restitution in certain circumstances. The majority then reasons that because Marsy's Law doesn't define the term "restitution," there cannot be a conflict between Marsy's Law's guarantee of "full and timely restitution" and the definition of "restitution" in the pre-amendment sentencing statute. Therefore, it says, the definition from the pre-amendment sentencing statute controls as to what Marsy's Law means. That's pretty much the extent of the majority's analysis. With a stroke of a pen, the right to restitution guaranteed by the new constitutional amendment is narrowed to nothing more than the majority's construction of a pre-amendment statute.

{¶ 31} The majority tries to justify this maneuver by claiming that the pre-amendment statute was created by the legislature to implement the prior version of Article I, Section 10a. But it never explains why that claim matters; the new constitutional provision is "the superior law," *Campbell*, 97 Ohio St. at 309, 119 N.E. 735. And the majority's claim also happens to be untrue. The version of Article I, Section 10a in effect prior to the passage of the Marsy's Law amendment provided:

> Victims of criminal offenses shall be accorded fairness, dignity, and respect in the criminal justice process, and, as the general assembly shall define and provide by law, shall be accorded rights to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process.

Nothing in the previous amendment spoke to restitution. The pre-amendment restitution statute was enacted as a sentencing law, not a victims' rights law. *Compare State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512 (including former R.C. 2929.18 as one of the community-control provisions enacted in 1995 as part of the "truth in sentencing" initiative of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136), *with State v. White*, 85 Ohio St.3d 433, 444, 709 N.E.2d 140 (1999) (noting that R.C. Chapter 2930 was enacted by the General Assembly as part of the Victims' Rights Act, which was designed to carry out the mandate in former Article 1, Section 10a).

{¶ 32} Also untrue is the majority's claim that "no portion of Marsy's Law 'conflicts' with the restitution statutes such that they are 'supersede[d].' " Majority opinion, ¶ 12, quoting Ohio Constitution, Article I, Section 10a(E). An obvious conflict is that under the pre-amendment statute, the court "may" impose a financial sanction of restitution, R.C. 2929.18(A), but Marsy's Law guarantees victims the "right" to restitution. Thus, courts no longer have discretion over whether to award restitution. And given the majority's recognition that the constitutional provision grants victims the right to "full" and "complete" restitution, it likely conflicts with and supersedes statutory law in that respect as well. *See, e.g.*, *State v. Oliver*, 12th Dist. Clermont No. CA2020-07-041, 2021-Ohio-2543, 176 N.E.3d 1054, ¶ 70 (concluding that courts no longer have discretion to reduce restitution awards based on a defendant's ability to pay).

{¶ 33} Nevertheless, it does not necessarily follow that the restitution provision under the Marsy's Law amendment has entirely supplanted the pre-amendment restitution statute. The amendment provides only that it "shall supersede all *conflicting* state laws." (Emphasis added.) Article I, Section 10a(E). Thus, by its own terms, the constitutional provision operates in conjunction with state laws with which it does not conflict. And it is only to the extent that a state law conflicts with the amendment that the constitution supersedes. As I will explain, the restitution provision in the Constitution conflicts with the statute in some respects, but not in all.

### III. The constitutional right to restitution

{¶ 34} I agree that Marsy's Law grants a victim the right to recover losses directly and proximately resulting from the commission of an offense. But unlike the majority, I would determine the scope of the right by examining the text and history of the constitutional amendment, rather than simply foisting a cramped reading of the pre-amendment statute onto the amendment.

{¶ 35} When interpreting a constitutional provision adopted by direct vote, we look to the plain language of the provision and consider how the words and phrases contained therein would have been commonly understood by the voters. *Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, at ¶ 22. Though the words of the amendment are paramount, contemporaneous discussion of the amendment and the history and circumstances of its adoption may provide additional context. *Id*.

{¶ 36} The Marsy's Law amendment incorporates the concept of proximate cause. The amendment defines a "victim" as "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Article I, Section 10a(D). Likewise, the amendment guarantees a victim "full and timely restitution from the person who *committed the criminal offense or delinquent act against the victim*." (Emphasis

added.)  Article I, Section 10a(A)(7).  By connecting the restitution award to the criminal act, the provision imposes a causation requirement.  In other words, the Constitution grants victims a right to restitution for losses occurring as a result of the commission of offenses against them.  This is consistent with the common view that criminal defendants are liable only for the harms proximately caused by their crimes.  *See, e.g., Paroline v. United States*, 572 U.S. 434, 446, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014) ("Proximate cause is a standard aspect of causation in criminal law and the law of torts"); *United States v. Monzel*, 641 F.3d 528, 536 (D.C.Cir.2011) ("By defining 'victim' as a person harmed 'as a result of' the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused").

{¶ 37} This tracks the discussion of the amendment by its proponents, who emphasized the right of victims to be compensated for *economic* losses stemming from the crimes against them.  A pre-election article published by the group Marsy's Law for Ohio, L.L.C., stated that the proposed amendment would provide a "right to restitution resulting from the financial impact of the crime."  Marsy's Law for Ohio, L.L.C., *Equal Rights for Crime Victims Goal of New Constitutional Amendment* (Jan. 24, 2017), https://www.marsyslawforoh.com /equal_rights_for_crime_victims_goal_of_new_constitutional_amendment (accessed Dec. 7, 2021) [https://perma.cc/A38E-N9UW].  That group further explained: "Marsy's Law provides that victims are entitled to full and timely restitution.  Courts are required to order restitution, not to exceed a victim's actual losses.  Victims must still prove their losses in compensable categories."  Marsy's Law for Ohio, L.L.C., *FAQs–Does a judge have to order restitution be paid to victims prior to court costs, fines, and fees or is this just assumed?  Do courts have discretion over what categories of restitution they order?*, https://www.marsyslawforoh.com/does_a_judge_have_to_order_restitution_be_p aid_to_victims_prior_to_court_costs_fines_and_fees_or_is_this_just_assumed_d

o_courts_have_discretion_over_what_categories_of_restitution_they_order (accessed Dec. 7, 2021) [https://perma.cc/Q5CF-L39Z].

**{¶ 38}** The ordinary meaning of "restitution" is "restoring someone to a position he occupied before a particular event." *Hughey v. United States*, 495 U.S. 411, 416, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990); *see also Webster's Third New International Dictionary* 1936 (1993) (defining "restitution" as "an act of restoring or a condition of being restored" or "restoration of a person to a former position or status"); *Black's Law Dictionary* 1507 (10th Ed.2014) (defining "criminal restitution" as "[c]ompensation for loss; esp., full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort, but ordered as part of a criminal sentence or as a condition of probation").

**{¶ 39}** Similarly, the Constitution's guarantee of "full" restitution entitles the victim to the "complete" and "maximum" amount of restitution. *See* definition of "full" in *Webster's* at 919; *see also People v. Garrison*, 495 Mich. 362, 369, 852 N.W.2d 45 (Mich.2014) (determining that the term "full restitution" in a statute entitled victims to an amount of restitution that is "complete and maximal"). A plain reading of the phrase "full restitution" conveys that a victim is entitled to receive the full amount necessary to compensate the victim for his or her losses.

**{¶ 40}** There is nothing in the text or history of the amendment to suggest that the constitutional guarantee of restitution was meant to invalidate the restitution statute in its entirety. Indeed, the amendment's proponents have continued to refer to the current statutes as outlining the scope of restitution that is compensable. *See* Marsy's Law for Ohio, L.L.C., *FAQs*, https://www.marsyslawforoh.com/faqs (accessed Dec. 8, 2021) (referring to the application of the current restitution statute in answering questions regarding Marsy's Law). But the Marsy's Law amendment employs broad language regarding restitution. Thus, I now turn to the restitution statute to determine whether it is possible to read the statute in a manner that is consistent with the broad restitution guarantee of Marsy's Law.

## IV.  When interpreted in a manner consistent with the Constitution, the statute permits victims to recover wages lost due to court attendance

{¶ 41} In concluding that victims could not recover wages lost due to court attendance, the court of appeals said that it was construing the constitutional restitution provision in the context of the existing statutory framework for restitution.  2020-Ohio-4822, 159 N.E.3d 1232, at ¶ 26.  The majority makes the same error here.  But just the opposite tack is required.  We must construe the statute in light of the constitutional provision's broad language and, to the extent possible, avoid a construction that would call the statute's constitutionality into question.  *See State v. Keenan*, 81 Ohio St.3d 133, 150, 689 N.E.2d 929 (1998) (when confronted with equally plausible interpretations, courts should give preference to a reading that would avoid constitutional problems over one that raises doubts as to the statute's constitutionality).

*A.  The plain language of the statute authorizes restitution of a victim's lost wages due to court attendance*

{¶ 42} In my view, we need not resort to the constitutional-avoidance principle here, because not only is it plausible to read the restitution statute to permit recovery of the lost wages sought in this case, but that is also the best reading of the statute.  R.C. 2929.18(A) provides for restitution in an amount based on the victim's economic loss.  And R.C. 2929.01(L) defines "economic loss" as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense."  The statute further includes in that definition examples of losses that would qualify as directly and proximately resulting from the offense and excludes noneconomic losses and other types of damages.

{¶ 43} In interpreting the statute, the majority lasers in on the word "commission."  In doing so, it loses sight of the phrase that the word is found in: "*any* economic detriment suffered by a victim *as a direct and proximate result of* the commission of an offense."  (Emphasis added.)  R.C. 2929.01(L).  That language is much broader than the majority allows.

{¶ 44} The statutory definition invokes traditional principles of causation, namely, actual and proximate cause.  "[T]o say one event proximately caused another is a way of making two separate but related assertions.  First, it means the former event caused the latter.  This is known as actual cause or cause in fact." *Paroline*, 572 U.S. at 444, 134 S.Ct. 1710, 188 L.Ed.2d 714.  Second, it is to say that the cause was sufficiently connected to the result, such that it can be said to have been a proximate cause of a particular event.  *Id.*  In other words, " 'there must be "some direct relation between the injury asserted and the injurious conduct alleged." ' "  *Id.*, quoting *CSX Trans., Inc. v. McBride*, 564 U.S. 685, 707, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011) (Roberts, C.J., dissenting), quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

**{¶ 45}** Proximate cause is typically explained in terms of foreseeability. *Id.* at 445; *see also Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981) (describing proximate cause as involving "a reasonable foreseeability"). " '[I]n determining what is direct or proximate cause, the rule requires that the injury sustained shall be the natural and probable consequence of the [act] alleged.' " *Strother* at 287, quoting *Miller v. Baltimore & Ohio Southwestern RR. Co.*, 78 Ohio St. 309, 325, 85 N.E. 499 (1908), *overruled on other grounds*, *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983). Conversely, a proximate-cause requirement "preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Paroline* at 445.

**{¶ 46}** The majority skips over the proximate-cause portion of the definition of economic loss, jumping instead to the examples listed in the statute. The majority reasons that because the definition of economic loss includes "any loss of income due to lost time at work because of any injury caused to the victim," R.C. 2929.01(L), the definition excludes the lost wages sought in this case.

**{¶ 47}** The majority's reading assumes that the examples of economic loss provided in R.C. 2929.01(L) form an exclusive list. They do not. The statute does not purport to provide an exhaustive list of what constitutes economic loss. Instead, it broadly defines economic loss as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense," provides a few examples, and specifically excludes from the definition "non-economic loss or any punitive or exemplary damages." R.C. 2929.01(L). If the examples in the definition were meant to be an exclusive list, the exclusions would be wholly unnecessary.

*B. The majority interprets the statute in a manner that conflicts with the constitutional right to restitution*

22

**{¶ 48}** Those difficulties with statutory interpretation aside, the majority's view of the statute suffers from a more fundamental problem. The majority relies only on the statutory definition, without any consideration of the constitutional text. But, of course, the Constitution is paramount: we must interpret the statute in a manner that is consistent with the Constitution, rather than cabin the constitutional guarantee through a cramped reading of statutory text.

**{¶ 49}** The majority takes the latter approach. In concluding that lost wages may be recovered only for the categories of loss listed in the statute, the majority reads proximate cause out of the statutory definition of economic loss and, consequently, interprets the pre-amendment restitution statute in a manner that conflicts with the Constitution. But again, if there is a conflict, it is the Constitution that prevails, not the statute.

**{¶ 50}** Restitution for wages lost due to a victim's attendance in court clearly falls within the scope of recovery permitted by the constitutional provision. The restitution provision in Marsy's Law entitles victims to restitution in the full amount of their actual losses incurred as a result of the criminal offenses against them. The statute must be read to facilitate this constitutional promise, otherwise the statute must give way to the constitutional provision.

*C. A victim's attendance in court is a foreseeable consequence of a crime*

**{¶ 51}** Both the statute and the constitution make paramount the requirement of direct and proximate cause: economic losses that would not have occurred but for the commission of the offense and that are a foreseeable result of the commission of the offense are compensable. And that is certainly the case here. John Yerkey's crimes were a cause in fact of his estranged wife's lost wages: but for his criminal conduct, there would have been no criminal proceedings for her to attend.

**{¶ 52}** Other courts have reached similar conclusions. In *United States v. Evers*, 669 F.3d 645 (6th Cir.2012), the Sixth Circuit Court of Appeals determined

that income lost by the legal guardian of a child victim due to the guardian's attendance in court was proximately caused by the crime and therefore compensable. The court explained that the guardian's lost wages "were directly attributable to his attendance at various stages of the investigation and trial in support of the victim," and concluded that it was "reasonably foreseeable that the parent or guardian of a minor victim of sexual exploitation [would] attend proceedings related to the prosecution of the case and, as a consequence, miss work." *Id.* at 659; *see also State v. Palubicki*, 727 N.W.2d 662, 667 (Minn.2007) (holding that it was "a direct result of the crime that the children of the murder victim attended the [court] proceedings and suffered lost wages" and that such losses were not "too attenuated from the criminal act" to be compensable); *Huddleston v. State*, 764 N.E.2d 655, 657 (Ind.App.2002) (concluding that lost wages incurred by the mother of a child victim as a result of her attendance at "pre-trial conferences, court dates, * * * and other appointments related to" the criminal case were compensable as a "direct and immediate result of the criminal acts").

{¶ 53} The "natural and probable consequence" of committing a crime is that the crime will be prosecuted and the victim will appear in court. *See Strother*, 67 Ohio St.2d at 287, 423 N.E.2d 467. Marsy's Law grants crime victims a constitutional right to be present at "all public proceedings involving the criminal offense or delinquent act against the victim." Ohio Constitution, Article I, Section 10a(A)(2). Following the enactment of Marsy's Law, it is entirely foreseeable that the victim may assert his or her constitutional right to be present at any and all proceedings related to the offense. And it is foreseeable that to attend those hearings, the victim may have to miss work and lose out on wages as a result. Regardless of whether Yerkey's estranged wife was subpoenaed to be in court or was present of her own volition, her attendance was a foreseeable consequence of Yerkey's crimes.

24

**{¶ 54}** The majority worries that reading the amendment in accord with its broad language "would risk mutating sentencing hearings throughout the state into civil trials of all grievances the victim may have against the offender, regardless of their relation to the crimes at issue." Majority opinion at ¶ 18. But there is no reason to think that trial courts are incapable of applying the proximate-cause standard to the facts presented. And despite the majority's handwringing about what "could have occurred" in this case, *see* majority opinion at ¶ 18, fn. 4, the reality is that the trial court had no trouble applying the appropriate legal standards to reject restitution sought by the victim for losses that were unrelated to Yerkey's crimes. Regardless, we are not permitted to consider inefficiencies or inconveniences when construing constitutional provisions, nor can we disregard constitutional rights simply because some may think them difficult to implement.

### V. Conclusion

**{¶ 55}** For the second time in a year, a majority of this court reads Marsy's Law in an unduly narrow manner, depriving victims of the rights they are guaranteed by the Ohio Constitution. *See DuBose v. McGuffey*, 168 Ohio St.3d 1, 2022-Ohio-8, 195 N.E.3d 951, ¶ 72 (DeWine, J., dissenting) ("Despite the fact that Ohio voters passed a constitutional amendment that guarantees victims the right to be heard in the bail process, the majority slams the door on a victim's right to be heard"). Let's hope there will yet come a day when this court finally grants victims the rights they are due under the Ohio Constitution.

**{¶ 56}** Marsy's Law guarantees victims a right to "full and timely" restitution. When a crime is committed, it is foreseeable that the crime will be prosecuted and that the victim will attend court proceedings; thus, income lost resulting from a victim's presence in court is a direct and proximate result of the commission of the offense. Under Marsy's Law and the restitution statute, crime victims are entitled to seek restitution for lost wages incurred as a result of their attendance at court proceedings related to crimes committed against them. I would

therefore reverse the court of appeals' contrary judgment and remand this case to that court for it to address Yerkey's remaining assignment of error. Because the majority does otherwise, I dissent.

KENNEDY and FISCHER, JJ., concur in the foregoing opinion.

_____

Vito J. Abruzzino, Columbiana County Prosecuting Attorney, and Tammie Riley Jones, Assistant Prosecuting Attorney, for appellant.

Rossi & Rossi Co., Gregg A. Rossi, and James N. Melfi, for appellee.

Steven L. Taylor, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Elizabeth Well and Diva Edel, urging reversal for amici curiae National Crime Victim Law Institute, Ohio Crime Victim Justice Center, Ohio Alliance to End Sexual Violence, Crime Victim Services, and Advocating Opportunity, Inc.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.

_____