[Cite as *State v. Weber*, 2026-Ohio-1142.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 25AP0008 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JEREMY G. WEBER | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2023 CRC-I 000451 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2026

SUTTON, Judge.

{¶1}   Defendant-Appellant Jeremy Weber appeals the judgment of the Wayne County Court of Common Pleas.  This Court affirms, in part, and reverses, in part.

I.

**Relevant Background Information**

{¶2}   This matter arises from a fire set to a recreational vehicle ("RV") owned by Mr. Weber.  At the time of the fire, the RV was located on the property of B.S., owner of Spangler Air & Repair, which is an automotive repair business.  Prior to selling the RV to Mr. Weber, his stepfather owned the RV.  Mr. Weber's stepfather asked Spangler Air & Repair to work on the RV.  Time elapsed and the cold weather prevented B.S. from repairing the RV.

{¶3}   After Mr. Weber took ownership of the RV, Mr. Weber and B.S. agreed Mr. Weber could work on the RV, which was still on Spangler Air & Repair's property, in order for Mr. Weber to make it operable and remove it.  Mr. Weber and B.S. agreed that Mr. Weber could have

a couple weeks to work on the RV, but if the RV was not moved at that time, B.S. would have the RV towed off his property. Subsequent to their initial conversation, Mr. Weber and B.S. had several discussions regarding removal of the RV from the Spangler Air & Repair property. B.S. gave Mr. Weber until August 1, 2022, to remove the RV from the property. When Mr. Weber had not removed the RV by August 1, 2022, B.S. had the Wayne County Sheriff serve Mr. Weber with a notice that the RV would be towed off the Spangler property on September 24, 2022.

{¶4} On the morning of September 24, 2022, Paul Pratt Service and Towing arrived on the Spangler Air & Repair property to tow away the RV. The towing company began to hook the RV up to its wrecker while waiting for the Wayne County Sheriff to arrive in case of an altercation with Mr. Weber. Prior to the Wayne County Sheriff arriving, Mr. Weber was awakened in the RV and was angry and agitated. B.S. and P.P., the tow truck driver, both heard Mr. Weber threaten to burn the RV. After Mr. Weber finished removing some personal items from the RV, Mr. Weber briefly went back into the RV and then exited the RV one last time. One to two minutes after Mr. Weber exited the RV, J.R., an employee of Paul Pratt Service and Towing, noticed the RV was on fire. P.P. went into the office to inform B.S. and get a fire extinguisher. B.S. came outside and saw smoke coming out of the RV's windows, and opened the door to extinguish the fire. During this time, P.P. and J.R. were attempting to unhook the RV from the wrecker.

{¶5} A deputy from the Wayne County Sheriff's office arrived at the Spangler property just as Mr. Weber was leaving the property out a different driveway. The fire department also arrived to extinguish the fire. Later that same day, the fire rekindled and the fire department returned to again extinguish the fire.

{¶6} After an investigation, Mr. Weber was charged with: (1) one count of aggravated arson, in violation of R.C. 2909.02(A)(1), a felony of the first degree; (2) one count of aggravated

arson, in violation of R.C. 2909.02(A)(2), a felony of the second degree; (3) one count of arson, in violation of R.C. 2909.03(A)(1), a misdemeanor of the first degree; and (4) one count of criminal damaging or endangering, in violation of R.C. 2909.06(A), a misdemeanor of the first degree.

{¶7} Mr. Weber pleaded not guilty and the matter proceeded to jury trial. The jury returned a verdict of not guilty on one count of aggravated arson, in violation of R.C. 2909.02(A)(1), and guilty on one count of aggravated arson, in violation of R.C. 2909.02(A)(2). Further, the trial court declared a mistrial on the counts of arson and criminal damaging. The trial court sentenced Mr. Weber to 4 to 6 years of imprisonment and required him to register with the Arson Offender Registry. Further, the trial court ordered restitution to Paul Pratt Service and Towing in the amount of $9,975.00.

{¶8} Mr. Weber now appeals raising two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE JURY'S GUILTY VERDICT ON COUNT 2, AGGRAVATED ARSON, WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE NONFUNCTIONING RV WAS NOT AN "OCCUPIED STRUCTURE" UNDER REVISED CODE CHAPTER 2909.**

{¶9} In his first assignment of error, Mr. Weber argues his conviction for aggravated arson was not supported by sufficient evidence. Specifically, Mr. Weber argues the State failed to prove, pursuant to R.C. 2909.01(C), the RV was an "occupied structure[.]"

{¶10} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J. concurring). For purposes of a sufficiency analysis, this Court must view the

evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶11}  R.C. 2909.02(A) states, in relevant part:

No person, by means of fire or explosion, shall knowingly do any of the following:

. . .

(2) Cause physical harm to any occupied structure[.]

Further, pursuant to R.C. 2909.01, occupied structure is defined as:

(C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

{¶12}  Here, the State presented evidence that Mr. Weber was actually inside his RV on the date of the arson and he had been staying in the RV while he was working on it at the Spangler property.  B.S. testified, "I know a lot of times [Mr. Weber] stayed there, because he was working late at night, early mornings, so, he came and went."  Further, B.S. testified on the morning of the arson, "I believe [P.P.] woke up [Mr. Weber][,]" when he knocked on RV door to let Mr. Weber

know the tow truck was there to remove the RV from the Spangler Air & Repair property. P.P. testified:

> When I went to get inside the RV. [Mr. Weber] was inside there and I told him I was going to take the RV and I'm not exactly sure the words he used, but, he was very, pretty sure that I wasn't going to take that RV, because he was living in it and he pretty much said he was going to scuttle the RV, so, [it] couldn't be taken.
>
> . . .
>
> [Mr. Weber] said he was going to burn it, but, I kind of thought he was joking, I mean, some people when they are under that kind of stress just say things like that, but, he wasn't lying.

The State also presented evidence that Mr. Weber was removing his personal belongings from the RV immediately prior to starting the fire, and there was a bedroom or sleeping area inside the RV.

{¶13} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the State proved the RV is an occupied structure, pursuant to R.C. 2909.01(C)(2), (3), and (4), and Mr. Weber committed aggravated arson beyond a reasonable doubt.

{¶14} Accordingly, Mr. Weber's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT LACKED AUTHORITY TO ORDER RESTITUTION PAYABLE TO A NON-VICTIM THIRD PARTY.**

{¶15} In his second assignment of error, Mr. Weber argues the trial court lacked authority to order restitution to Paul Pratt Service and Towing. Specifically, Mr. Weber argues Paul Pratt Service and Towing is a third-party contractor; not a victim of the arson.

{¶16} "The statutory meaning of restitution was not altered or expanded by Marsy's Law." *State v. Yerkey*, 2022-Ohio-4298, ¶ 19. "Consequently, 'restitution' continues to mean compensation for economic losses or economic detriment suffered by the victim "as a direct and proximate result of the commission of the offense[.]" *Id*. at ¶ 15. "Generally speaking, a

consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *Id*. at ¶ 16.

{¶17} R.C. 2929.18 states, in relevant part:

(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section, and shall sentence the offender to make restitution pursuant to this section and section 2929.281 of the Revised Code. The victim has a right not to seek restitution. Financial sanctions that either are required to be or may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount based on the victim's economic loss. In open court, the court shall order that full restitution be made to the victim, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. At sentencing, the court shall determine the amount of restitution to be made by the offender. The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution. The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court imposes restitution for the cost of accounting or auditing done to determine the extent of economic loss, the court may order restitution for any amount of the victim's costs of accounting or auditing provided that the amount of restitution is reasonable and does not exceed the value of property or services stolen or damaged as a result of the offense. The court shall hold a hearing on restitution if the offender, victim, victim's representative, or victim's estate disputes the amount. The court shall determine the amount of full restitution by a preponderance of the evidence. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or the victim's estate against the offender.

Although "victim" is not defined in R.C. 2929.18, "victim" is defined in the Ohio Constitution, under Marsy's Law, as "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Ohio Const., art. I, § 10a. "The issue of who constitutes a "victim" under R.C. 2929.18(A)(1) or to whom

restitution may appropriately be awarded under the statute is a question of law that is reviewed de novo." *State v. Cartwright*, 2017-Ohio-7212, ¶ 11 (12th Dist.). "This Court will review the trial court's factual findings for competent, credible evidence and its legal conclusions de novo." *State v. Miller*, 2013-Ohio-985, ¶ 6 (9th Dist.).

{¶18} Mr. Weber did not dispute the amount due in restitution, which is $9,975.00, therefore the trial court did not hold a separate hearing to determine the amount of restitution. However, at sentencing, Mr. Weber did dispute that Paul Pratt Service and Towing was the proper victim in this matter. At the sentencing hearing, the following discussion was had between the trial court and Mr. Weber's counsel:

> THE COURT: Looking at the restitution that's been submitted, it appears to be for two heavy wreckers and service trucks, as well as labor, secure burnt RV for towing, replace tires and airbags for transport, dismantle RV for scrapping, miscellaneous supplies, floor dry, oxygen, acetylene, fiberglass disposal, storage pending release, disposal, heavy duty towing to scrap yard, no scrap value. It doesn't appear this is for actual services performed in repair of the vehicle, it sound like, or what it appears to be from this invoice is this is what was required to do after the RV was burned to remove it. Have you seen the same thing I'm seeing?
>
> [COUNSEL]: Yes, Your Honor, so, that would be work done as a result of this. In my mind, that work done is a wholly separate issue, that's not the arson itself, they are not the victims. They are a tangential service that was proved as a result of it. I don't see that as that being appropriate under a Marsy's law application of what a victim is or how a victim is to be reimbursed. This is a work order for the services that were provided.
>
> . . .
>
> The definitions on Marsy's law explains that a victim is somebody who is directly harmed or proximately harmed as a result of this, whatever the offense may be. What we have here is a work order of the tow company that came back, removed the vehicle that was burnt there, broke it down and scrapped it. . . . Although the work is something that they could have chosen to accept or could have chosen to take, that does not necessarily make them victims in this particular circumstance, because it's not harm, it's just work service provided separately and independently of that.
>
> . . .

[THE COURT]: All right, the court notes that the definition of a victim is a person against whom a criminal offense is committed or someone who has been directly and proximately harmed by the commission of the criminal offense. In this present case, the defendant was convicted of setting on fire a motorhome that was parked on the property of the tow company while it was being in the process of being towed to another location. The, the motorhome was completely destroyed through the fire and the tow company was faced with a choice of either leaving that burnt motor home sitting on its property on a driveway or moving it or disposing of it, the court will find, based on the facts of this case, that for purposes of definition of a victim, that the tow company was, in fact, proximately harmed by the commission of the criminal offense, based upon that finding, the court will then proceed to issue a restitution order.

{¶19} Here, the record does not support with competent, credible evidence the trial court's finding that the RV was parked and burned on Paul Pratt Service and Towing's property and that Paul Pratt Service and Towing was faced with the decision to leave the burnt RV on its property or have it removed. Instead, the record shows the RV was on Spangler Air & Repair's property when Mr. Weber started the fire and burned the RV. Further, the burnt RV was left on Spangler Air & Repair's property, and, after the fire investigation was complete, Spangler Air & Repair was faced with the decision and expense of having the burnt RV removed from its property. The dissent ignores the fact the trial court's determination of who is a "victim" in this matter is not based upon competent, credible evidence. As a reviewing court, however, this Court cannot simply ignore or gloss over such an error. It is important to note that with respect to whether Paul Pratt Service and Towing *can* be a victim pursuant to R.C. 2929.18 is not before us. The issue before us is whether the trial court's decision is based upon competent, credible evidence. Accordingly, where the trial court has expressly based its decision and analysis on the mistaken belief that the fire occurred on the property of Paul Pratt Service and Towing, this Court must reverse for further proceedings.

**{¶20}** Based upon the facts in the record, as indicated above, we remand this matter to the trial court to determine, pursuant to R.C. 2929.18, the victim or victims to receive restitution in the amount of $9,975.00.

**{¶21}** Accordingly, Mr. Weber's second assignment of error is sustained.

III.

**{¶22}** Mr. Weber's first assignment of error is overruled and his second assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is affirmed, in part, and reversed in part. This matter is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

BETTY SUTTON
FOR THE COURT


HENSAL, J.
<u>CONCURS.</u>

FLAGG LANZINGER, P. J.
<u>CONCURRING IN PART, AND DISSENTING IN PART.</u>

**{¶23}** I respectfully concur in part, and dissent in part. I agree with the majority's decision to overrule Weber's first assignment of error. I disagree with the majority's decision to sustain Weber's second assignment of error because I would hold that the trial court did not err when it determined that Paul Pratt Service and Towing was a victim in this matter that was entitled to restitution.

**{¶24}** As the majority explains, Marsy's Law defines a "victim" as "a person against whom the criminal offense or delinquent act is committed *or who is directly and proximately harmed by the commission of the offense or act.*" (Emphasis added.) Ohio Const. art. I, § 10a(D). "Generally speaking, a consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *State v. Yerkey*, 2022-Ohio-4298, ¶ 16. Here, Paul Pratt Service and Towing incurred $9,975.00 in damages as a direct and proximate result of Weber's acts. Thus, I would determine that Paul Pratt Service and Towing is a victim that is entitled to restitution. *See State v. Crosby*, 2024-Ohio-2877, ¶ 14 (1st Dist.) (relying on the definition of "victim" under Marsy's Law and concluding that the trial court did not err when it awarded restitution under R.C. 2929.18 to a

law firm); *see also* R.C. 2929.71 (allowing public agencies to seek restitution from convicted arsonists for the costs incurred during the investigation of a fire or explosion).

**{¶25}** The majority's decision to reverse and remand the matter for the trial court to determine "the victim or victims to receive restitution" is an exercise in futility. Initially, I would note that a trial court can hold a combined hearing for purposes of sentencing and restitution, which occurred in this case. At the hearing, Weber did not dispute the amount of restitution owed, that is, $9,975.00. Awarding that amount to any other person or entity would then require Paul Pratt Service and Towing to seek reimbursement from that person or entity. *See State v. Haskett*, 2024-Ohio-5933, ¶ 18 (1st Dist.), quoting *State v. Thornton*, 2017-Ohio-4037, ¶ 20 (1st Dist.) ("[W]here a victim has been fully reimbursed by a third party, a trial court errs by granting restitution to the victim that 'would result in an impermissible windfall and would frustrate the purposes of restitution.'"). Even if I were to conclude that Paul Pratt Service and Towing is not a "victim" in this case, I see no harm in eliminating any intermediary and awarding $9,975.00 directly to Paul Pratt Service and Towing. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.").

**{¶26}** For these reasons, I respectfully concur in part, and dissent in part.

APPEARANCES:

BENJAMIN R. SORBER, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH SALZGEBER, Assistant Prosecuting Attorney, for Appellee.